WESTERN ELECTRIC CO. v. NORTH ELECTRIC CO. et al.

(Circuit Court of Appeals, Sixth Circuit. May 12, 1904.)

No. 1,256.

1. PATENTS—VALIDITY AND INFRINGEMENT—ELECTRIC ANNUNCIATORS.
    The Warner patent, No. 477,616, for an improvement in electric annunciator drops, claim 1, is void for lack of novelty; claim 4, if valid, must be limited to the specific construction described. As so construed, *held* not infringed.

Appeal from the Circuit Court of the United States for the Northern District of Ohio.

This is a bill to restrain infringement of claims 1 and 4 of patent No. 477,616, for an "improvement in electric annunciator drops, issued to James C. Warner, assignor to the Western Electric Company." Upon the pleadings and evidence, Wing, District Judge, dismissed the bill; holding the first claim void for want of novelty, and the fourth, if valid, not infringed.

Edward Rector and De Witt C. Tanner (George P. Barton, of counsel), for appellant.

Albert Lynn Lawrence, for appellees.

Before LURTON, SEVERENS, and RICHARDS, Circuit Judges.

LURTON, Circuit Judge. The patentee recites in his specifications that his invention "relates to electric annunciators of the class usually employed as individual signaling devices in the telephone exchange system," and that his objects, so far as they relate to the two claims involved, are "to provide a soft iron shield about the coil, so as to prevent, as far as possible, inductive effects between the coils of the different magnets when placed near each other," and "to provide for carrying out the ends of the wire of the coil of each annunciator to separate connecting pieces at the rear, so that they may be readily accessible."

The claims in suit read as follows:

"(1) The combination, with the coil or helix, of a soft iron shield surrounding the same, the armature at the rear of the core of said helix, and the armature lever extending forward through a slot or opening in the plate, b, and the drop with which said lever is adapted to be engaged when the drop is lifted, and to be disengaged therefrom when the armature is attracted, substantially as and for the purpose specified."

"(4) The annunciator provided with the armature, d, provided with openings, the ends of the wire of the helix being carried back through said openings in said armature and connected with insulated connecting pieces, h, i, respectively, substantially as and for the purpose specified."

Electric annunciators were well known in the electric art when Warner applied for the patent. One of the constructions most in use was the subject of a patent issued to the same inventor October 24, 1882, serial number 266,405. The magnetic annunciator there shown and claimed is the device of the first claim, except the soft iron tube inclosing the coil or helix. We need not indulge in the scientific aspects of magnetic or electric inductors. It is enough to say that one of the manifestations of magnetic induction, between adjacent annunciators, is to produce between the users of two talking circuits connected with two adjacent electric annunciators a transfer of the voice current from one circuit to the other, called in the vocabulary of the telephone art "cross-talk." This cross-talk is undeniably the result of a considerable degree of induction, and, in proportion as induction is prevented, cross-talk currents are less observable or annoying. While, therefore, the patentee does not refer to cross-talk in his specifications as something which it was his object to suppress or minimize, he does distinctly declare his object to be "to prevent, as far as possible, inductive effects between the coils of the different magnets when placed near each other." Undoubtedly one of the effects of induction is to weaken the force of the current by the waste thus caused. But another effect in telephony was this disagreeable "cross-talk" between users of different talking circuits. Warner proposed to minimize induction as far as possible, and his method for doing it was to surround the magnetic coil with a tube of soft iron. That induction was by this device so minimized as to cause the practical disappearance of cross-talk is established. As one incidental result, it became feasible to arrange such annunciators very closely together in ranks, with one row in line above another, in telephone exchanges. This enabled considerable economy of space in the organization of telephone exchanges where there were a large number of subscribers, and possibly some economy of operator service. But it was not new to surround the magnetic coil of an annunciator with a shield or tubing of soft iron. The English patent of 1875 to Faulkner shows an annunciator magnet inside soft iron tubing. Faulkner's improvements are described as relating to "indicators" as well as electric bells, telegraph sounders, etc., and consists, says the patentee, "in using a round, square, or other shaped iron tube or case to cover the outside of the coil or bobbin." The object, he says, is "to collect, accumulate, and utilize all the magnetic or electric power, thereby preventing the loss of force that takes place in the electro-magnets or magneto-electro magnets as hitherto used." True, he does not say that loss of force by induction was to be thereby prevented, but that is necessarily accomplished by his device, and is but one of the modes of loss of electric force. Figure 6 of his drawings shows an electric indicator not materially different from that of Warner, though not in form adapted to use in telephone exchanges with economy of space. That Faulkner suggested an alternative form by which his tubing might be made in several pieces, or by the employment of an iron segment only, is not destructive of the teaching of his patent. His preferred form is that the tubing shall be in one piece. In that

form the best results against waste of magnetic cross-currents are obtained, and that form is the one used in each of Faulkner's several drawings. That magnetic force will not act across a shield of soft iron seems to have been a well-known fact in the field of electric art, and in an elementary work upon the subject, open and known to the public, we find this stated, and that, "if a small magnet is suspended inside a hollow ball made of iron, no outside magnet will affect it. A hollow shell of iron will therefore act as a magnetic cage, and secure the space inside from magnetic influence." Elementary Laws in Electricity and Magnetism, by S. P. Thompson (Ed. 1887). Claim 1 must be held void for want of novelty.

One of the other objects of the inventor, we have already seen, was to provide "for carrying out the ends of the wires of the coil of each annunciator to separate connecting pieces at the rear, so that they may be readily accessible." He further states in his patent that, with this object, his invention consists "in providing an opening or openings in the armature, and an insulated support at the rear of the same, upon which are mounted connecting pieces; the different ends of the coil being carried back to said connecting piece to make the connection readily accessible at the rear." Upon this is based the fourth claim. We agree with the court below in saying that "no change in the operation of the device was effected by thus leading the wires out of the helix through the armature. Nothing was accomplished except possible greater convenience in attachment." To carry the magnet wire back to the rear of the case for the purpose of attachment was not novel. Neither was it new to convey them back through openings in the armature. For such an arrangement, see patents to Barrett, No. 360,266; Shelbourne, No. 342,881; Sawyer, No. 242,055; and British patent to Eldred, No. 676 of February 7, 1883. If the claim is to be sustained at all, which is a doubtful matter, it can only be sustained by confining Warner to the specific device he has described. Thus limited, the defendant does not infringe.

The decree dismissing the bill is therefore affirmed.